UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:22-CV-00361-CHB

**ANTHONY O.**                                                                                                      **PLAINTIFF**

**VS.**

**KILOLO KIJAKAZI,** *Acting*
*Commissioner of Social Security*                                                        **DEFENDANT**

## REPORT AND RECOMMENDATION

Claimant Anthony O. appeals from the final determination of the Commissioner of Social Security denying his application for child disability benefits. (DN 1). Claimant has filed a Motion for Summary Judgment (DN 14) and a Fact and Law Summary (DN 15). The Commissioner has responded in a Fact and Law Summary. (DN 21). Claimant filed a reply brief. (DN 22). The Commissioner recently filed a Notice of Supplemental Authority, alerting the Court of the Eighth Circuit's recent decision in *Dahle v. Kijakazi*, 62 F. 4th 424 (8th Cir. 2023) (DN 23). The District Judge has referred the case to the undersigned United States Magistrate Judge for consideration and preparation of a Report and Recommendation, as authorized in 28 U.S.C. § 636(b)(1)(B). (DN 13).

### I. Findings of Fact

Marlena O. applied for supplemental security income benefits for her minor son, Anthony O. ("Claimant") on May 23, 2019.[1] (Tr. 204). Claimant's application was denied at both the initial

---

[1] There is some discrepancy in the record regarding Claimant's protective filing date. Claimant's Motion for Summary Judgment, the Commissioner's Fact & Law Summary, and the ALJ's decision all identify Claimant's protective filing date as May 23, 2019. But Claimant's Application Summary for Supplemental Security Income indicates Marlena O. filed Claimant's Application for benefits on May 31, 2019. (Tr. 204). This discrepancy does not affect any analysis provided in this Report and Recommendation.

and reconsideration levels. (Tr. 68-98). At Claimant's request, Administrative Law Judge Candace McDaniel ("ALJ McDaniel") conducted a hearing in Louisville, Kentucky on February 16, 2021. (Tr. 42-43, 122). Claimant attended the hearing by telephone with his mother and his attorney.[2] An impartial vocational expert also attended the hearing. (*Id.*).

During the hearing, Claimant testified to the following. He was eighteen years old and living in a house with his mother and younger brother. (Tr. 47). After he graduated high school, he began attending Jefferson Community Technical College and studying computer programming. (*Id.*). Claimant does not have a driver's license. (Tr. 51). He has never had a job. (Tr. 52).

Beyond completing school assignments and occasional chores, like taking the garbage out or laundry, Claimant spends most of his time computer gaming. (Tr. 53-54). He showers, dresses, and prepares snacks for himself. (Tr. 54). Though he eats meals downstairs with his family "[m]aybe once every day or two," he avoids any interaction requiring him to leave the house. (Tr. 55-56). Claimant explains he does not like leaving his gaming and "people tend to give [him] anxiety[.]" (Tr. 56). This anxiety causes him to scratch or pick at his skin, sometimes to the point of bleeding. (Tr. 56-57). Claimant's sleep is inconsistent; sometimes he gets 12-14 hours and has trouble getting out of bed, but other days he sleeps only an hour or two. (Tr. 58). He did not have any medical visits in 2020 or 2021 and admitted he doesn't like going to counseling. (Tr. 61).

Toward the end of the hearing, ALJ McDaniel presented a hypothetical to the vocational expert ("VE"), asking whether an individual with Claimant's age, education and work experience, that needed to avoid "concentrated exposure to temperature extremes involving wetness and humidity and concentrated exposure to fumes, odors, dust, gases, and pulmonary irritants," and that could interact occasionally with supervisors and coworkers, "but not in tandem with limited

---

[2] Claimant waived his right to an in-person hearing because of the COVID-19 pandemic. (Tr. 46, 200).

jobs not requiring interaction with the public for task completion" could perform work in the national economy. (Tr. 61-62). The VE responded that such a hypothetical individual could perform work as a packager, a kitchen helper, or a laundry worker. (Tr. 62). ALJ McDaniel asked whether the VE's testimony was consistent with the Dictionary of Occupational Titles ("DOT") and its companion, and the VE responded affirmatively. (Tr. 63).

ALJ McDaniel also asked Claimant's mother several questions. Claimant's mother testified that she gives her son daily reminders to eat and change clothes and helps him with "pretty much all of his daily tasks." (Tr. 65). She confirmed that Claimant scratches and digs at his skin when he is overwhelmed, and he sometimes cries while doing his schoolwork. (Tr. 66).

ALJ McDaniel issued an unfavorable decision on May 12, 2021. (Tr. 34). She applied the Commissioner's three-step sequential evaluation process as identified in 20 C.F.R. § 416.924(a) (*see* Tr. 16) and found as follows. First, Claimant had not engaged in substantial gainful activity since May 23, 2019, his application date. (Tr. 20). Second, prior to attaining age 18, Claimant had the following severe impairments: autism, anxiety, depression, and asthma. (*Id.*). Finally, prior to attaining age 18, Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (Tr. 29). ALJ McDaniel then determined that based on the entire record, Claimant, since attaining age 18, has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations:

> [Claimant] should avoid concentrated exposure to temperature extremes involving wetness and humidity as well as concentrated exposure to fumes, odors, dusts, gases, and pulmonary irritants; can understand, remember, and carry out simple and detailed instructions; and can interact occasionally with supervisors and coworkers but no work in tandem with coworkers and no interaction with the public for task completion.

(Tr. 30).

Claimant appealed ALJ McDaniel's decision. (Tr. 201). The Appeals Council declined review, finding no basis for changing the ALJ's decision. (Tr. 1). At that point, the denial became the final decision of the Commissioner, and Claimant appealed to this Court. (DN 1).

## II. Standard of Review

When reviewing the Administrative Law Judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, the Court's review of the Administrative Law Judge's decision is limited to an inquiry as to whether the Administrative Law Judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the Administrative Law Judge employed the proper legal standards in reaching his conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). The Supreme Court has clarified "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted).

## III. Conclusions of Law

Claimant argues the Commissioner's decision should be remanded on two grounds. First, Claimant believes ALJ McDaniel failed to identify and resolve conflicts between the VE's testimony and the Dictionary of Occupational Titles (DOT). Second, Claimant contends ALJ McDaniel and the members of the Appeals Council were not properly appointed under the Constitution, meaning their adjudication of Claimant's case was unlawful.

A. Conflicts between the VE's Testimony and the DOT

Claimant argues ALJ McDaniel violated Social Security Ruling 00-4p, which requires an ALJ to identify, address, and explain the resolution of apparent conflicts between the testimony of the VE and the contents of the DOT. (DN 14-1, at PageID # 670). Specifically, Claimant highlights that the three jobs identified by the VE (packager, kitchen helper, and laundry worker) require frequent or significant exposure to the environmental conditions that ALJ McDaniel found prohibited by Claimant's RFC. ALJ McDaniel's failure to account for and resolve this discrepancy, Claimant argues, warrants remand. (*Id.* at PageID # 671).

The Commissioner responds that ALJ McDaniel complied with SSR 00-4p by asking the VE whether her testimony was consistent with the DOT. (DN 21, at PageID # 709). According to the Commissioner, no additional follow-up by ALJ McDaniel was necessary as to the accuracy of the VE's testimony. Rather, the Commissioner argues it was Claimant's counsel's duty to question the VE on cross-examination as to any perceived conflicts. Regardless, the Commissioner argues none of the three jobs identified by the VE impermissibly conflict with ALJ McDaniel's RFC restrictions. (DN 21, at PageID # 712-13). And even if a conflict existed between the environmental RFC restrictions and the listings for kitchen helper and laundry worker, the Commissioner maintains any error was harmless since the 174,600 packager jobs identified by the VE qualify as a significant number of jobs in the national economy. (*Id.* at PageID # 714).

In reply, Claimant agrees that an ALJ may rely on VE testimony where it conflicts with the DOT but that the ALJ must follow the very specific process in SSR 00-4p and ALJ McDaniel did not do so here. (DN 22, at PageID # 718). As for the Commissioner's argument that no impermissible conflict exists between the environmental RFC restrictions and Claimant's ability to perform the DOT jobs, the Claimant states the ALJ and the VE should have engaged in this type

of analysis, not the attorneys litigating the case on appeal. (*Id.* at PageID # 719).

It is undisputed that when making a non-guideline determination, an ALJ can rely on evidence such as the testimony of a VE and the Dictionary of Occupational Titles (DOT), published by the Department of Labor, to establish that work exists in the national economy. *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847 (6th Cir. 2010). SSR 00-4p was created in December of 2000 to clarify the Administration's standards "for the use of vocational experts (VEs) who provide evidence at hearings before administrative law judges (ALJs) . . . and other reliable sources of occupational information in the evaluation of disability claims." Soc. Sec. Ruling 00-4p, 2000 WL 1898704, at *1 (Dec. 4, 2000). This Ruling advises that occupational evidence provided by a vocational expert "should generally be consistent with the occupational information supplied by the DOT." *Id.* at *2. The Ruling continues: "[w]hen there is an apparent unresolved conflict between the VE . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence" to support a disability determination. *Id.* Part of the ALJ's duty under this Ruling is inquiring on the record whether such a consistency exists. *Id.*

SSR 00-4p does not address how an ALJ should proceed when a conflict between the VE testimony and the DOT is not apparent. But the Sixth Circuit has held that where a conflict is not apparent and a claimant fails to bring the conflict to the ALJ's attention, the ALJ is neither required "to conduct an independent investigation into the testimony of witnesses to determine if they are correct" nor "explain how the conflict was resolved." *Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 374 (6th Cir. 2006).

Recently, the Sixth Circuit reaffirmed its holding in *Kyle*, stating that an ALJ can rely on vocational expert testimony so long as the ALJ "either ensure[s] that the evidence does not conflict

6

with the information in the DOT or obtain[s] a reasonable explanation for any conflict." *O'Neal v. Comm'r of Soc. Sec.*, 799 F. App'x 313, 316-18 (6th Cir. 2020) (citing *Kyle*, 609 F.3d at 855; *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 603 (6th Cir. 2009)). An ALJ satisfies this requirement by asking a vocational expert whether their testimony aligns with the DOT. *Id.*; *see also Lindsley*, 560 F.3d at 603. In *O'Neal*, the Sixth Circuit didn't base its finding that the vocational expert's testimony constituted substantial evidence of jobs and the claimant's ability to perform work in significant numbers in the national economy based solely on the ALJ ensuring that no conflict existed with the DOT and the vocational expert's testimony. Rather, the Sixth Circuit also based its determination on the fact that claimant's counsel "had a chance to cross-examine the vocational expert during the hearing, and he did not." *Id.* at 318.

In this case, ALJ McDaniel presented a hypothetical set of limitations to the VE during Claimant's administrative hearing. Relevant to Claimant's argument is the ALJ's hypothetical restriction that the individual would need "to avoid concentrated exposure to temperature extremes involving wetness and humidity and concentrated exposure to fumes, odors, dust, gases, and pulmonary irritants[.]" (Tr. 61). The VE responded that such a hypothetical individual could perform work activity in the national economy and gave three examples: (1) packager (DOT # 920.587-018), with roughly 174,600 jobs in the national economy; (2) kitchen helper (DOT # 318.687-010), with roughly 297,000 jobs in the national economy; and (3) laundry worker (DOT #361.685-018), with roughly 397,400 jobs in the national economy. (Tr. 62). The VE identified that all three were "medium, unskilled jobs with a [sic] SVP of 2[.]" (*Id.*).

ALJ McDaniel then gave Claimant's counsel the opportunity to examine the VE. (*Id.*). Claimant's counsel inquired whether the same hypothetical individual could sustain the employment identified with the additional restrictions of being off task more than 20% of the

workday and missing more than three days of work consistently. (Tr. 62-63). The VE responded that either additional restriction would prevent Claimant from sustaining the employment previously identified. (Tr. 63). Claimant's counsel did not ask any specific questions regarding the DOT job titles identified by the VE or any potential conflicts between the VE's testimony and the DOT. Following the strictures of SSR 00-4p, ALJ McDaniel then asked the VE whether the testimony she provided was consistent with the DOT and its companion, to which the VE responded: "[y]es, with the exception of the off task behavior and absences from work, [which she] base[d] on [her] education, training, and experience." (*Id.*).

ALJ McDaniel adopted an RFC identical to the hypothetical presented to the VE during the hearing. (Tr. 30). She found Claimant, since attaining age 18, could perform "a full range of work at all exertional levels" but with several non-exertional limitations, including avoidance of "concentrated exposure to temperature extremes involving wetness and humidity as well as concentrated exposure to fumes, odors, dusts, gases, and pulmonary irritants[.]" (*Id.*). Relying on the VE's testimony, ALJ McDaniel ultimately determined that, "since attaining age 18, considering claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Tr. 34).

Upon independently reviewing the DOT job titles the ALJ relied upon, the Court agrees discrepancies exist between the VE's testimony and the job titles for kitchen helper and laundry worker. *See* DOT # 318.687-010, 1991 WL 672755 (Jan. 1, 2016); DOT # 361.685-018, 1991 WL 672987 (Jan. 1, 2016). Even the Commissioner concedes the DOT descriptions for each of the three jobs identified by the VE require frequent exposure to extreme heat. Yet under these circumstances, the Court cannot say the conflict in the VE's testimony was apparent. Consistent

with SSR 00-4p, ALJ McDaniel asked the VE whether there was a conflict. The VE testified there was not. The Claimant did not bring any conflict to ALJ McDaniel's attention at the hearing. Pursuant to SSR 00-4p and Sixth Circuit caselaw, ALJ McDaniel was not required to further confirm the accuracy of the VE's testimony by uncovering, then resolving, the non-apparent conflict. *See Birgit K. v. Kijakazi*, No. 3:21-CV-00689-RSE, 2022 WL 3365070, at *5 (W.D. Ky. Aug. 15, 2022) (citing *Martin*, 170 F. App'x at 374).

Even if ALJ McDaniel had failed in resolving these non-apparent conflicts, any error was harmless. As explained by the Commissioner, the job title for "packager" prohibits frequent exposure to extreme heat but sets no limitations relating to wetness or humidity. Again, ALJ McDaniel's RFC required Claimant to avoid "concentrated exposure to temperature extremes involving wetness and humidity . . ." (Tr. 30). According to Merriam-Webster's Dictionary, the word "involving," the present participle of "involve," in this context means "hav[ing] within or as part of itself" or "requir[ing] as a necessary accompaniment[.]" Merriam-Webster's Online Dictionary, https://www.merriam-webster.com/dictionary/involve (last visited Feb. 14, 2022). Applying this definition to ALJ McDaniel's RFC limitation would only prohibit Claimant's exposure to extreme temperatures when accompanied by wetness or humidity. Had ALJ McDaniel meant to separately limit Claimant's exposure to wetness and humidity outside of temperature extremes, she would have omitted the word "involving" and simply used a comma between the restrictions. Although the jobs of kitchen helper and laundry worker may conflict with the Claimant's RFC, the job title for packager contains no similar restriction as to wetness or humidity. *See* DOT # 920.587-018, 1991 WL 687916 (Jan. 1, 2016). Accordingly, the 174,600 packager jobs identified by the VE constitutes work existing in significant numbers in the national economy. ALJ McDaniel did not err in relying on the VE's testimony.

B. Appointments Clause

Next, Claimant argues neither ALJ McDaniel nor the Appeals Council members were properly appointed under the Constitution. Specifically, Claimant asserts Acting Commissioner Nancy Berryhill had no authority under the Federal Vacancies Reform Act (FVRA) to make such appointments because she was serving in excess of the 210 days of active service permitted under 5 U.S.C. § 3346(a)(2). According to Claimant, any action Berryhill took after November 16, 2017 violated the FVRA and the Appointments Clause, meaning that neither ALJ McDaniel, nor the Appeals Council members that adjudicated Claimant's case, had legal authority to do so. (*Id.*). Claimant relies exclusively on two cases from the District of Minnesota, *Brian T.D. v. Kijakazi*, 580 F. Supp. 3d 615 (D. Minn. 2022) and *Richard J. M. v. Kijakazi*, No. 19-cv-827 (KMM), 2022 WL 959914, at * (D. Minn. Mar. 30, 2022) and adopts the arguments of the claimants in those cases. The Commissioner alerted the Court to the Eight Circuit's recent decision in *Dahle v. Kijakazi*, which holds that *Brian T.D.* and other similar cases from the District of Minnesota are no longer good law. (DN 23).

i. The Federal Vacancies Reform Act (FVRA)

The FVRA "provides a framework for temporarily filling vacancies in offices for which presidential appointment and Senate confirmation ("PAS") is required." *Northwest Immigrant Rts. Project v. U.S. Citizenship & Immigr. Servs.*, 496 F. Supp. 3d 31, 53 (D.D.C. 2020) (citing 5 U.S.C. § 3345 et seq.). Relevant here is 5 U.S.C. § 3346 of the FVRA, which imposes time limits on those "serving as an acting officer." This statute provides:

> (a) Except in the case of a vacancy caused by sickness, the person serving as an acting officer as described under section 3345 may serve in the office –
>
> > (1) For no longer than 210 days beginning on the date the vacancy occurs;
> >
> > or

10

> (2) Subject to subsection (b), once a first or second nomination for the office is submitted to the Senate, from the date of such nomination for the period that the nomination is pending in the Senate.

5 U.S.C. § 3346(a).

### ii. Factual Background

President Barack Obama issued a memorandum in December 2016 providing an order of succession within the SSA, which listed the Deputy Commissioner of Operations ("DCO") as first in line to serve as Acting Commissioner if vacancies occurred for Commissioner and Deputy Commissioner. *See* "Memorandum Providing an Order of Succession Within the Social Security Administration," 81. Fed. Reg. 96337, 2016 WL 7487744 (Dec. 23, 2016) (*hereinafter* "Succession Memo"). On January 20, 2017, Donald Trump was inaugurated as President. As a result, then-Acting Commissioner Carolyn Colvin resigned and then-DCO Nancy Berryhill began serving as Acting Commissioner pursuant to President Obama's Succession Memo. *See Jamie K v. Kijakazi*, No. 8:21-CV-373, 2022 WL 3577013, at *14 (D. Neb. Aug. 19, 2022). On March 6, 2018, the United States Government Accountability Office (GAO) issued a Notice reporting that, pursuant to §3346(a) of the FVRA, Berryhill's service as Acting Commissioner had expired on November 16, 2017. *See* U.S. Gov't Accountability Office, No. B-329853, "Violation of the Time Limit Imposed by the Federal Vacancies Reform Act of 1998 – Commissioner, Social Security Administration," www.gao.gov/assets/700/690502.pdf, at 1 (Mar. 6, 2018). Berryhill then stepped down as Acting Commissioner and resumed her role as DCO. In April of 2018, President Trump initially nominated Andrew Saul as Commissioner of the SSA, and Berryhill resumed service as Acting Commissioner while Saul's nomination was pending. *Jamie K.*, 2022 WL 3577013, at *14.

The Senate confirmed Saul's nomination on June 4, 2019. *See* United States Senate, https://www.senate.gov/legislative/LIS/roll_call_votes/vote1161/vote_116_1_00133.htm (last

11

visited Feb. 15, 2023). Berryhill remained in the Acting Commissioner position until June 17, 2019, when Saul was officially sworn in as Commissioner. *See* Social Security Administration, SSA Executive Bios, https://www.ssa.gov/ndf/documents/SSA%20Executive%20Bios-11182020.pdf.

In June of 2018, while Saul's nomination was pending, the Supreme Court issued a decision in *Lucia v. S.E.C.,* finding the appointments of ALJs in the Securities and Exchange Commission (SEC) by lower-level staff violated the Constitution's Appointments Clause. 138 S. Ct. 2044 (2018). Because the SEC ALJs in *Lucia* were not appointed by either the President, a court of law, or the head of a department, the Supreme Court deemed their appointments unconstitutional. *Id.* at 2055. Following *Lucia*, many social security claimants raised similar challenges to the appointment of the ALJs adjudicating their claims. As a result, under the title of Acting Commissioner, Berryhill preemptively "ratified the appointments" of all SSA ALJs and "approved those appointments as her own." Social Security Ruling 19-1p, Titles II and XVI: Effect of the Decision in Lucia v. Securities and Exchange Commission (SEC) on Cases Pending at the Appeals Council, 2019 WL 1324866, at *2 (Mar. 15, 2019) (SSR 19-1p).

### iii. *Brian T.D.*

As stated above, Claimant asserts the same arguments as the claimants in two cases from the District of Minnesota: *Brian T.D.* and *Richard J.M.* In *Brian T.D.*, the District of Minnesota concluded that Berryhill was not properly appointed under § 3346(a) for her second term because she was not "serving as Acting Commissioner" when Saul was nominated to the position on April 17, 2018. 580 F. Supp. 3d at 629. The court additionally found Berryhill was without authority to nominate ALJs during her second term as Acting Commissioner because subsection (a)(2) is not a "spring-back" provision that would have permitted Berryhill to resume her position after her

initial 210-day service expired. *Id.* at 629-631. The court interpreted § 3346(a) as permitting an acting officer's service for either a period of 210 days beginning the date the vacancy occurred *or* while a nomination for the office is pending once the nomination is submitted to the Senate, but not both. *Id.* at 631. Specifically, the court found the statute's use of "or" rendered subsections (a)(1) and (a)(2) mutually exclusive. *Id.* Elaborating on this position, the court indicated the statute's use of "[t]he word 'or' modifies the entire provision that limits the acting officer to a period 'no longer than' 210 days from the date the vacancy arose [and, t]hus, when read with the entirety of subsection [3346(a)(1)[,], 'or' serves to suspend that time limitation, not to create an entirely separate and distinct period of service." *Id.* at 631. The District of Minnesota reinforced *Brian T.D.'s* analysis and holding in *Richard J.M.* and in other decisions rendered in the past year.[3]

Yet while Claimant's appeal was pending before this Court, the Eighth Circuit reversed the District of Minnesota's decision in *Brian T.D.*, holding that the text and legislative history of the FVRA show the intent of the legislative branch "to allow an individual to serve noncontinuously under subsections 1 and 2." *Dahle v. Kijakazi*, 62 F. 4th 424, 429 (8th Cir. 2023). The Eighth Circuit concluded Berryhill "was properly serving as Acting Commissioner when she ratified the appointment of the SSA ALJs." *Id.*

iv. Other Districts

Other Districts have overwhelmingly followed the Eighth Circuit's recent interpretation of § 3346(a).[4] These Districts find Berryhill had authority to ratify the appointments of ALJs during

---

3 *See Stephanie G. v. Kijakazi*, No. 21-1290, 2022 WL 4112413, at *2-7 (D. Minn. June 21, 2022); *Richard J.M. v. Kijakazi*, No. 19-cv-827 (KMM), 2022 WL 959914, at *1-6 (D. Minn. Mar. 30, 2022) (presently on appeal at 8th Cir.); *Lisa W. v. Kijakazi*, No. 20-cv-1634, 2022 WL 4288441, at *1 (D. Minn. Mar. 21, 2022) (presently on appeal at 8th Cir.); *Tyrese L. L. v. Kijakazi*, No. 21-cv-1411, 2022 WL 1463069, at *1-2 (D. Minn. Mar. 9, 2022).

4 *See, e.g., Coe v. Kijakazi*, No. 5:22-cv-226-KDW, 2023 WL 554119, at *11-13 (D.S.C. Jan. 27, 2023); *Stanley v. Kijakazi*, No. 1:22CV43, 2023 WL 318581, at *19 (M.D.N.C. Jan. 19, 2023); *Vanorden v. Comm'r of Soc. Sec.*, No. 21-19985 (ZNQ), 2022 WL 17959586, at *4-5 (D.N.J. Dec. 27, 2022); *Hernandez v. Kijakazi*, No. 22-01556 (FLW), 2022 WL 17751355, at *11-16 (D.N.J. Dec. 19, 2022); *Tony M. v. Kijakazi*, No. 6:22-CV-02007-LRR, 2022 WL

13

her second term as Acting Commissioner because the plain language of § 3346(a) provides for "acting service in two instances: during the initial 210 days after a vacancy is created, and while a nomination is pending." *Bauer*, 2022 WL 2918917, at *8; *see also Jamie K.*, 2022 WL 3577013, at *15; *Mia S.*, 2022 WL 3577023, at *14.

Starting with the meaning of "serving" in § 3346(a), the majority explains that subsection (a) refers to "the person serving as an acting officer as described under section 3345[,]" and section 3345 sets out who may serve as an acting officer (first assistants or certain people directed by the President). *Id.* at *5. These courts point out the active verb used by Congress in subsection (a)(1) is "may serve," which "did not convey that the person had to be currently serving for the nomination rule in subsection (a)(2) to apply. *Id.* In *Bauer*, the Northern District of Iowa found it would be nonsensical for "serving" in subsection (a) to mean the person must be currently serving at the time of the nomination ("the person serving . . . from the date of the nomination"), because it would also mean the person must be currently serving at the time of the vacancy ("the person serving . . . on the date the vacancy occurs"). *Id.*

When interpreting the statute's use of "or" between subsections (a)(1) and (a)(2), the *Bauer* court found the two subsections were not mutually exclusive. The court explained how the word "either," rather than "or," typically denotes exclusivity between statutory provisions. *Id.* at *7. The court reasoned the statute's disjunctive use of "or" allows one individual to serve either of the

---

17177310, at *17-20 (N.D. Iowa Nov. 23, 2022); *Watts v. Kijakazi*, No. 21-2044, 2022 WL 18109797, at *11-13 (E.D. La. Nov. 18, 2022); *M.A.K. v. Kijakazi*, 1:21-cv-03028-JLK, 2022 WL 16855690, at *3-4 (D. Col. Nov. 10, 2022); *Sidney M. v. Kijakazi*, -- F. Supp. 3d --, 2022 WL 4482859, at *21 (N.D. Iowa Sept. 26, 2022); *Jamie K v. Kijakazi*, No. 8:21-CV-373, 2022 WL 3577013, at *14 (D. Neb. Aug. 19, 2022); *Mia S. v. Kijakazi*, No. 8:21-CV-439, 2022 WL 3577023, at *13 (D. Neb. Aug. 19, 2022); *Black v. Kijakazi*, No. 1:21-CV-322-KDB, 2022 WL 2977340, at *3 (W.D.N.C. July 27, 2022); *Bauer v. Kijakazi*, No. 21-CV-2008-KEM, 2022 WL 2918917, at *5 (N.D. Iowa July 25, 2022); *Brooks v. Kijakazi*, No. 1:21CV609, 2022 WL 2834345, at *13 (M.D.N.C. July 20, 2022); *Lance M. v. Kijakazi*, No. 2:21-cv-628, 2022 WL 3009122, at *11 (E.D. Va. July 13, 2022); *Williams v. Kijakazi*, No. 1:21-CV-141-GCM, 2022 WL 2163008, at *3 (W.D.N.C. June 15, 2022); *Early v. Kijakazi*, No. 5:21-CV-00096-KDB, 2022 WL 2057467, at *4 (W.D.N.C. June 7, 2022).

periods in § 3346(a)(1) and (a)(2) or both. Under this interpretation, (a)(2) serves as a spring-back provision, which permitted Berryhill to resume her position as Acting Commissioner despite previously serving 210 days under subsection (a)(1).

Like the Eighth Circuit's rejection of *Brian T.D.*, the majority of districts have emphasized their position is consistent with the legislative history of the FVRA. In *Hernandez*, the District of New Jersey explained that Senate Committee members discussed and contemplated what would happen if a nomination was submitted after an acting official's term had expired under § 3346(a)(1). 2022 WL 17751355, at *14 (citing S. Rep. No. 105-250, 105th Cong., 2d Sess. 1998, 1998 WL 404532 (July 15, 1998)). The Senate Committee stated that "the need for a 'cure' in the case of a nomination made subsequent to the expiration of [the 210-day period from subsection (a)(1)] to allow an acting official to resume the functions and duties of the vacant office" was a significant consideration in the statute's adoption. *Id.* at *30. The Committee went so far as to state:

> Under new section 3346(a)(2), and subject to section 3346(b), an acting officer may serve *more than [210] days* if a first or second nomination is submitted to the Senate, and may serve while that nomination is pending from the date the nomination is submitted. The acting officer may serve *even if the nomination is submitted after the [initial 210 days has passed.*

*Id.* at *14 (emphases added). The *Hernandez* court also explained how the legislative intent from the Senate Report reveals that subsections (a)(1) and (a)(2) were meant to apply to the same individual who originally was eligible to be acting officer when the vacancy arose under (a)(1) and that the word "or" between the subsections is meant inclusively, so that the same acting officer could serve under either or both time periods. *Id.* at *14 (citing S. Rep. No. 105-250, 1998 WL 404532, at *14-15).

15

These cases further bolster their position with support from the Executive Branch. The Department of Justice Office of Legal Counsel issued a memorandum in 1999 expressly stating that § 3346 (a)(2) contains a spring-back provision. *See* DOJ's OLC, *Guidance on Application of Federal Vacancies Reform Act of 1998*, 23 U.S. Op. Off. Legal Counsel, 1999 WL 1262050, at *8 (Mar. 22, 1999). The GAO took a similar position in Notice No. B-328888 in March of 2017, stating § 3346(a)(2) contains a spring-back provision that "allows an acting official to resume performing the duties of the office . . ." U.S. Gov't Accountability Office, No. B-328888 "Violation of the 210-day Limit Imposed by the Federal Vacancies Reform Act of 1998 – Department of Energy, Director of Office of Science, www.gao.gov/assets/b-328888.pdf (Mar. 3, 2017). Very recently, the GAO issued a similar decision relating to the Acting General Counsel of the Federal Labor Relations authority that agrees with the Northern District of Iowa's analysis of § 3346(a) from *Bauer*. *See* U.S. GAO No. B-334563, "Violation of the Time Limit Imposed by the Federal Vacancies Reform Act of 1998: General Counsel, Federal Labor Relations Authority," https://www.gao.gov/assets/820/817383.pdf at 1 (Feb. 8, 2023) ("Section 3346(a) states that 'the person serving as an acting officer as described under section 3345 *may* serve in the office' for both 210 days 'beginning on the date the *vacancy* occurs' and 'once a first or second nomination for the office is submitted to the Senate . . . for the period that the nomination is pending in the Senate.'").

v. Analysis

Although none of the cases discussed above are binding authority on this Court, the undersigned has previously adopted the majority's interpretation of § 3346(a). *See* Findings of Fact, Conclusions of Law and Recommendation, Kimberly D. v. Kijakazi, No. 3:21-CV-00753-DJH (W.D. Ky. Dec. 2, 2022), DN 15, *adopted in full by* Order, Kimberly D. v. Kijakazi, No.

16

3:21-CV-00753-DJH (W.D. Ky. Jan. 6, 2023), DN 19. The undersigned takes the same position now. The Eighth Circuit has unequivocally rejected *Brian T.D.*'s interpretation of the FVRA. *Dahle*, 62 F. 4th at 429-30. And, notwithstanding the Eighth Circuit's reversal, *Brian T.D.* is "an outlier that conflicts with the plain text of the FVRA, nearly every other court to address the issue, as well as the views of the Executive Branch and Legislative Branch." *Williams*, 2022 WL 2163008, at *3; *see also Lance M.*, 2022 WL 3009122, at *14 ("I am not alone in rejecting *Brian T.D.*'s interpretation). The Court finds Berryhill was validly serving as Acting Commissioner under § 3346(a) of the FVRA when she ratified the appointment of ALJ McDaniel in 2018, and Claimant's claim of error fails.

## IV. Recommendation

For the foregoing reasons, the Court **RECOMMENDS** the Commissioner's decision be **AFFIRMED**.

## NOTICE

Therefore, under the provisions of 28 U.S.C. " 636(b)(1)(B) and (C) and Fed.R.Civ.P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties.  Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court.  If a party has objections, such objections must be timely filed or further appeal is waived. *Thomas v. Arn*, 728 F.2d 813 (6th Cir.), *aff'd*, 474 U.S. 140 (1984).

Copies:		Counsel